IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PATERSON BROWN, SR. and
KATHY M. BROWN, Co-Administrators
of the Estate of Paterson Brown, Jr.,
Deceased,

    Plaintiffs,

v.                                              Civil Case No. 3:17-cv-00627-JAG

DAVID L. COBB, Individually and in his
Official Capacity as a Police Officer for the
City of Richmond, Virginia, and CITY OF
RICHMOND,

    Defendants.

## OPINION

This case arises from the fatal shooting of 18-year-old Paterson Brown by an off-duty Richmond police officer, David L. Cobb. The administrators of Brown's estate, Paterson Brown, Sr., and Kathy Brown,[1] filed this action against Cobb and the City of Richmond, alleging several claims pursuant to 42 U.S.C. § 1983, as well as state law claims.

The § 1983 claims include a Fourth Amendment claim of use of excessive force (Count I), an Eighth Amendment claim of cruel and unusual punishment (Count II), and (against the City only) failure to train and supervise Cobb (Count III). Brown also asserts state law claims of gross negligence (Count IV), assault and battery (Count V), "survivorship" (Count VI), and "punitive damages" (Count VII) against both Cobb and the City.

---

[1] The Court will refer to Paterson Brown, Sr., and Kathy Brown collectively as the "plaintiffs." The court will refer to the decedent simply as "Brown."

The City has moved to dismiss the entire suit against it. Cobb has moved to dismiss only Count II.

The Court will grant the motions to dismiss Count II, alleging an Eighth Amendment claim. The Eighth Amendment prohibits cruel and unusual punishment after conviction of crime. *Ingraham v. Wright*, 430 U.S. 651, 671 n. 40 (1977). Since Brown was not convicted of any offense, the plaintiffs cannot assert an Eighth Amendment claim, and the Court will dismiss Count II with prejudice.[2]

As to the other claims, the Court will grant the City's motion to dismiss. The § 1983 claims fail because Brown has not alleged any facts showing that the City's policy, custom, or usage led to a violation of the victim's rights. The state law claims fail for various reasons under Virginia law, discussed below.

## I. FACTS ALLEGED IN COMPLAINT

On the morning of October 17, 2015, Cobb, an off-duty Richmond police officer, brought his girlfriend's car to Better Vision Detail & Car Spa in North Chesterfield, Virginia. When Cobb left his car unattended, Paterson Brown got into the car. Cobb saw Brown get into the car and realized that Brown did not work for Better Vision. Cobb approached the car with his gun drawn and opened the driver-side door. Cobb identified himself as a Richmond police officer, and, paradoxically, told Brown both to get out of the car and not to move. Cobb also requested that a bystander call 911 to request "backup" from the Chesterfield Police Department. Brown had no weapon, and Cobb apparently did not perceive a threat to his safety.

At one point, Brown tried to close the driver-side door, prompting Cobb to move closer to the car with his gun drawn. When Brown tried to close the door a second time, Cobb stood in

---

[2] The plaintiffs do not object to the dismissal of Count II.

the way with his gun drawn, within two or three feet of Brown, and violently pulled Brown's left arm to prevent the door from closing. This apparently caused Brown's foot to come off the brake, and the car moved forward. Cobb then shot Brown, either because he thought Brown was trying to drive away when the car inched forward, or because he felt Brown had disobeyed Cobb's order not to move.

The gunshot struck Brown in an artery near his left pelvis, resulting in severe blood loss. After shooting him, Cobb pulled Brown out of the car and placed him face down on the ground, but did not pat him down for a weapon. An ambulance transported Brown to CJW Medical Center, where he died later that day. A Chesterfield County jury convicted Cobb of voluntary manslaughter on February 9, 2017. Cobb served three months in jail.

## II. DISCUSSION[3]

### A. Count I: § 1983 for Excessive Force

Title 42 U.S.C. § 1983 provides in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

---

[3] The defendants have moved to dismiss pursuant to Federal Rule of Procedure 12(b)(6). A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

3

42 U.S.C. § 1983. To establish liability under § 1983, a plaintiff must demonstrate that the defendant acted under color of law, violated the plaintiff's federal constitutional or statutory rights, and caused injury. *Brown v. Mitchell*, 308 F. Supp. 2d 682, 692 (E.D. Va. 2004).

A local government cannot be liable for the constitutional torts of its employees under the doctrine of respondeat superior. A plaintiff cannot sue a local government "under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). Instead, a locality faces liability only when officers inflict injury while executing the government's custom, usage, or policy. *Id.* In other words, "the municipality *itself* [must] cause the constitutional violation" to establish liability; vicarious liability will not attach to a municipality under § 1983. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). Moreover, § 1983 does not apply when one employee "happen[s] to apply the policy in an unconstitutional manner." *Id.* at 387.

Thus, the plaintiffs cannot hold the City vicariously liable under § 1983 for Cobb's alleged use of excessive force in violation of the Fourth Amendment. In Count I, the plaintiffs try to hold the City liable for the shooting, but they do not even suggest that Cobb shot Brown pursuant to any kind of *Monell* custom or policy. Given the absence of even a hint of a *Monell* policy, the Court dismisses Count I with prejudice.

### *B. Count III: § 1983 for Failure to Properly Train and Supervise*

The plaintiffs attempt to satisfy *Monell* by alleging a municipal policy or custom of failing to train and supervise Cobb. To hold a municipality liable under *Monell*, a plaintiff may look to either the locality's "formal decisionmaking channels," or to "a practice [that] is so 'persistent and widespread' and 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (quoting *Monell*,

4

436 U.S. at 691). In this case, even if the plaintiffs establish that Cobb acted under color of state law,[4] *Monell* insulates the City from liability unless the plaintiffs adequately allege that the City's custom or policy caused Cobb's conduct. The plaintiffs allege two theories of policy-related liability: failure to train and failure to supervise.

With regard to training, "[in] limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights" may constitute "policy" pursuant to *Monell*. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To recover under this "tenuous" theory of liability, *id.*, a plaintiff must identify a "specific deficiency rather than general laxness or ineffectiveness in training." *Spell v. Daniel*, 824 F.2d 1380, 1390 (4th Cir. 1987). A plaintiff must also show that the locality's training policies resulted from at least deliberate indifference on the part of policymakers, and establish a "sufficiently close causal link" between the training deficiency and the alleged violation. *Id.* In terms of the causation element, the specific training deficiency alleged must make the violation essentially "bound to happen." *Spell*, 824 F.2d at 1390.

The deliberate indifference element creates "a stringent standard of fault," *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997), which a plaintiff cannot plead generally. *Tobey v. Napolitano*, 808 F. Supp. 2d 830, 843 (E.D. Va. 2011). It requires the municipality to disregard a known or obvious consequence of its decision. *Bd. of Cty. Comm'rs*, 520 U.S. at 410. A

---

[4] The Court assumes without deciding that Cobb acted under color of state law. The complaint fails to establish a policy-based theory of liability under *Monell*, so the plaintiffs' § 1983 claims fail regardless. If the plaintiffs adequately re-plead Count III, the Court will need to consider whether, as an off-duty police officer, Cobb acted under color of law at the time of the incident. This inquiry poses a mixed question of law and fact. The Court will need to examine the City's policies and orders that specify the duties of off-duty officers, as well as Virginia law empowering police to take official actions, both within and outside of their jurisdictions, and when off and on duty. *See Revene v. Charles County Comm'rs*, 882 F.2d 870, 872–873 (4th Cir. 1989).

plaintiff can allege deliberate indifference by pleading facts to indicate that policymakers knew about and acquiesced in "a pattern of constitutional violations." *Moody v. City of Newport News*, 93 F. Supp. 3d 516, 538 (E.D. Va. 2015). Alternatively, a plaintiff can allege the city failed to train employees about an "obvious constitutional duty that the particular employees are certain to face." *Id.* The "paradigmatic example" of an obvious constitutional duty that police officers will face involves using deadly force. *Id.* at 539.

Here, plaintiffs offer only vague and conclusory allegations about the City's failure to train. The plaintiffs ask the Court to infer from Cobb's incident with Brown that the City does not adequately train its police officers on the use of deadly force. They do not plead facts indicating how the City failed to train officers, that the City knew about and acquiesced in a pattern of violations, or that the City's action or inaction caused the injury. *Saub v. Phillips*, No. 3:16-cv-414, 2017 WL 1658831, at *5 (E.D. Va. May 1, 2017), *aff'd*, 699 F. App'x 179 (4th Cir. 2017) (per curiam). An allegation that the City did not satisfactorily train one officer will not suffice to hold the City liable. *City of Canton*, 489 U.S. at 390. Moreover, even "adequately trained officers occasionally make mistakes." *Id.* at 391. A number of other factors, for which the City does not bear responsibility, might have caused Cobb's actions in this case. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 831 (1985).

The complaint, though thin on the failure to train issue, suggests that the plaintiffs could allege more facts to show that the City's policy failed to train police officers regarding their "obvious constitutional duty" surrounding the use of deadly force. *Moody*, 93 F. Supp. 3d at 539–40. The plaintiffs have not pled sufficient facts in the current complaint, so the Court will dismiss Count III for failure to train, but will grant leave to file an amended claim on this issue.

Turning to supervisory liability, the Fourth Circuit has not clearly established that § 1983 supervisory liability applies to municipalities. *Moody*, 93 F. Supp. 3d at 540; *see also Pratt-Miller v. Arthur*, 701 F. App'x 191, 193 (4th Cir. 2017) (considering *supervisory* liability against an *official* separately from *municipal* liability against an *entity*). Nevertheless, a claim for supervisory liability against an official requires a plaintiff to plead: (1) that the supervisor had actual or constructive knowledge that a subordinate engaged in conduct posing a "pervasive and unreasonable risk of constitutional injury;" (2) that the supervisor's response showed deliberate indifference regarding the offensive practices; and (3) a causal link between the supervisor's inaction and the plaintiff's injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). To establish a pervasive and unreasonable risk of injury, a plaintiff must show widespread conduct, or at least conduct that the subordinate "used on several different occasions." *Id.* As with failure to train, "[t]he plaintiff assumes a heavy burden of proof in establishing deliberate indifference," but can do so by demonstrating that a supervisor repeatedly failed to act in the face of documented widespread abuse. *Id.*

The plaintiffs have alleged none of these facts. Even if supervisory liability applies to the City, the complaint does not allege any facts indicating that the City, as supervisor, knew that Cobb engaged in conduct presenting a "pervasive and unreasonable risk of constitutional injury," and acted with deliberate indifference regarding the risk that Cobb posed. *Shaw*, 13 F.3d at 799. Thus, the Court dismisses Count III as it pertains to supervisory liability, but again grants leave to amend.

## C. Counts IV, V, VI: State Law Claims[5]

The plaintiffs assert three state law claims: gross negligence,[6] assault and battery, and survivorship. The plaintiffs allege that Cobb acted in his official capacity as a Richmond police officer, and thus they argue that the Court can find the City liable for his torts. The analysis that follows applies to all three claims.

Sovereign immunity protects municipalities from tort liability arising from employees exercising governmental functions. *Niese v. City of Alexandria*, 564 S.E.2d 127, 132 (Va. 2002). A function is governmental when it is "directly tied to the health, safety, and welfare of the citizens," meaning it "involves the exercise of an entity's political, discretionary, or legislative authority." *Id.* A municipality enjoys immunity from liability for negligence *and* intentional torts stemming from governmental functions. *Id.* at 132–33. A plaintiff, however, may hold a locality liable for negligence associated with proprietary functions, which have a corporate or private nature. *Id.* at 132. Maintaining a police force qualifies as a governmental function, so a municipality enjoys immunity for its police officers' torts in the performance of their duties. *Id.*

In this case, the plaintiffs allege that Cobb, though off-duty at the time, acted within the scope of his employment with the Richmond Police Department during his confrontation with Brown. If true, the City enjoys immunity from liability for Cobb's torts, since he performed a governmental function as a police officer. *Hales v. City of Newport News*, No. 4:11-cv-28, 2011

---

[5] The plaintiffs do not respond to the City's motion to dismiss the state law claims and the punitive damages claim. *See* Pl. Opp., at 2, 7 (arguing the Court should deny the motion "as to the following issues" and "to the extent argued above.") Nevertheless, the Court will consider these claims to ensure proper dismissal as to Counts IV–VII. *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 416 n. 3 (4th Cir. 2014).

[6] The complaint asks the Court to infer that the City had actual notice of the plaintiffs' negligence claim within six months of the action accruing, as Virginia Code § 15.2-209 requires. Because the Court dismisses the negligence claim on other grounds, this Opinion need not reach that issue.

WL 4621182, at *4 (E.D. Va. Sept. 30, 2011). Of course, if Cobb did not act within the scope of his employment, the Court cannot hold the City vicariously liable for Cobb's actions. *E.g.*, *Glenmar Cinestate, Inc. v. Farrell*, 292 S.E.2d 366, 369–70 (Va. 1982). Thus, in either event, the plaintiffs' state law claims against the City fail.

### D. Count VII: Punitive Damages

Plaintiffs cannot recover punitive damages from a municipality for § 1983 claims. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Although *Newport*'s holding pertained to punitive damages specifically under § 1983, the Supreme Court observed that the common law did not expose municipalities to punitive damages at all. *Id.* Relying on *Newport*, Virginia courts have generally refrained from awarding punitive damages against municipalities on all claims. *Cleaves-McClellan v. Shah*, 93 Va. Cir. 459, 466 (Va. Cir. Ct. 2016); *McDonnell v. Hampton Rds. Sanitation Dist.*, 5 Va. Cir. 149, 152 (Va. Cir. Ct. 1984) (listing policy reasons), *aff'd on other grounds*, 360 S.E.2d 841 (Va. 1987).

In this case, the Court will dismiss the claims against the City, but notes that, in any event, the plaintiffs would not have received punitive damages for either their § 1983 or state law claims. Even if the plaintiffs adequately replead Count III, they still cannot recover punitive damages for this § 1983 claim. The Court therefore dismisses Count VII.

### III. CONCLUSION

The complaint fails to plead municipal liability under § 1983, so the Court dismisses Counts I and III. The plaintiffs, however, may file an amended complaint restating Count III. The Court dismisses Counts IV–VI because the City enjoys immunity from these state law claims, to the extent Cobb even acted within the scope of his employment. The plaintiffs cannot recover punitive damages against the City under any of the claims alleged, so the Court also

9

dismisses Count VII. Finally, the Court dismisses Count II since no Eighth Amendment claim can possibly exist here.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: June 21, 2018
Richmond, VA

/s/ 
John A. Gibney, Jr.
United States District Judge