IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PATERSON BROWN, SR. and
KATHY M. BROWN, Co-Administrators
of the Estate of Paterson Brown, Jr.,
Deceased,

    Plaintiffs,

v.                                                Civil Case No. 3:17-cv-00627-JAG

DAVID L. COBB, Individually and in his
Official Capacity as a Police Officer for the
City of Richmond, Virginia, and CITY OF
RICHMOND,

    Defendants.

## **OPINION**

This case arises from the fatal shooting of 18-year-old Paterson Brown, Jr., by an off-duty Richmond police officer, David L. Cobb. The administrators of Brown's estate, Paterson Brown, Sr., and Kathy Brown,[1] filed this action against Cobb and the City of Richmond (the "City"). On June 21, 2018, the Court granted the City's motion to dismiss the original complaint, but gave the plaintiffs leave to amend their § 1983 count for the City's failure to train its police officers.[2] On July 23, 2018, the plaintiffs filed their amended failure to train claim. The City moved to dismiss.

The plaintiffs allege facts that could indicate that Cobb acted under color of state law, and that the City did not adequately train him on the use of force. The Court, therefore, will deny the

---

[1] The Court will refer to Paterson Brown, Sr., and Kathy Brown collectively as the "plaintiffs." The Court will refer to the decedent as "Brown."
[2] The § 1983 claim against the City stemmed from a Fourth Amendment excessive force claim against Cobb. The plaintiffs originally alleged both failure to train and failure to supervise against the City, but their amended complaint proceeds only on a failure to train theory.

motion to dismiss. In short order, however, the Court expects to have a closer look at the curriculum the City uses to train police officers. This closer look may well lead to an entirely different result.

## I. FACTS ALLEGED IN THE AMENDED COMPLAINT

The Court adopts the factual allegations set forth in its previous Opinion. (Dk. No. 20.) In their amended complaint, the plaintiffs add that Cobb's answer to the original complaint acknowledged that "all of his relevant actions in this matter comported and complied with the training he received" from the Richmond Police Department (the "RPD"). (Am. Compl. ¶ 45.) Additionally, the plaintiffs allege specific deficiencies in the City's police training involving the use of deadly force. These include failing to properly train officers to (1) inquire into the physical and mental condition of individuals who display "visible and obvious signs of mental distress, drug use, or other mental disturbance," (*id.* ¶ 47); (2) "exhaust[] all other reasonable alternatives before using deadly force" such as "professional presence/identification, verbalization, soft control techniques, intermediate techniques, hard control techniques, and/or less lethal force," (*id.* ¶ 48); (3) use a degree of force proportional to the "threat presented," (*id.* ¶ 49); and (4) "properly communicate with members of the public during a crisis situation,"[3] (*id.* ¶ 50).

---

[3] In support, the plaintiffs cite Cobb's conflicting instructions to Brown to "exit the subject vehicle while at the same time telling him not to move." (Am. Compl. ¶ 50.)

2

## II. DISCUSSION[4]

In relevant part, § 1983 provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. To establish liability under § 1983, a plaintiff must demonstrate that the defendant acted under color of law, violated the plaintiff's federal constitutional or statutory rights, and caused injury. *Brown v. Mitchell*, 308 F. Supp. 2d 682, 692 (E.D. Va. 2004).

### A. Under Color of Law

As a threshold matter, the plaintiffs must allege that Cobb acted under color of law. "[U]nder 'color' of law means under 'pretense' of law." *Keller v. District of Columbia*, 809 F. Supp. 432, 435 (E.D. Va. 1993) (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945)). Government officials act under color of law, therefore, if they purport to act pursuant to their authority as government officials, whether they "hew to the line of their authority or overstep it." *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). On the other hand, "[a]cts of police officers in the ambit of their personal, private pursuits fall outside of . . . § 1983." *Id.* at

---

[4] A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

872. "The color of law requirement excludes from the reach of § 1983 all 'merely private conduct, no matter how discriminatory or wrongful.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).

In distinguishing between private actions and actions taken under color of law, "the lack of the outward indicia suggestive of state authority—such as being on duty, wearing a uniform, or driving a patrol car—are not alone determinative of whether a police officer is acting under color of state law." *Revene*, 882 F.2d at 872. Instead, "the nature of the act performed is controlling." *Id.* To make this determination, courts consider whether the defendant identified himself as a police officer, whether he drew his firearm, and whether he detained or arrested the plaintiff. *Keller*, 809 F. Supp. at 436; *Drewitt v. Pratt*, No. 2:92-cv-13, 1992 WL 516032, at *2 (E.D. Va. Oct. 9, 1992).

Here, the plaintiffs allege that (1) Cobb "approached the vehicle with his firearm drawn," (Am. Compl. ¶ 16); (2) Cobb "identified himself to Mr. Brown as an officer of the RPD and instructed Mr. Brown to exit the vehicle," (*id.* ¶ 20); and (3) after shooting Brown, Cobb removed Brown from the car and "placed him face-down on the ground," (*id.* ¶ 37). *See Keller*, 809 F. Supp. at 436 (identifying these acts as consistent with acting under the color of state law); *Drewitt*, 1992 WL 516032, at *2 (same). On the one hand, the allegations in the amended complaint seem "consistent with a purely personal pursuit, outside the scope of § 1983." *Revene*, 882 F.2d at 873. An alternative reading, however, indicates that Cobb purported to act pursuant to his authority as a government official, "which of course falls within § 1983." *Id.* at 873-74 (holding that a well-pleaded complaint survives a motion to dismiss "even if the factual assertions are equally consistent with a contrary conclusion").

For these reasons, the plaintiffs have pled sufficient facts to establish that Cobb acted under color of state law.

## B. Failure to Train

The plaintiffs must also plead that the City's failure to train *caused* the constitutional violation.[5] Local governments qualify as "persons" under § 1983 and may be sued directly for constitutional depravations. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Local governments, however, face liability only when their agents inflict a constitutional injury while executing the local government's policy or custom. *Id.* at 694. In other words, a plaintiff must show that "the municipality *itself* cause[d] the constitutional violation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). Thus, local governments do not bear liability for the constitutional torts of their employees under the doctrine of respondeat superior. *Monell*, 436 U.S. at 691. Moreover, liability will not attach when one employee "happen[s] to apply the policy in an unconstitutional manner." *City of Canton*, 489 U.S. at 387.

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights" may constitute "policy" pursuant to *Monell*. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To recover under this "tenuous" theory of liability, *id.*, "a plaintiff must plead and prove that: (1) the [local government] subordinates actually violated the plaintiff's constitutional or statutory rights; (2) the [local government] failed to train properly the subordinates thus illustrating a 'deliberate indifference' to the rights of the persons with whom the subordinates come into contact; and (3) this failure to train actually caused the subordinates to violate the plaintiff's rights." *Mitchell*, 308 F. Supp. 2d at 701. Because the

---

[5] The City does not dispute that an underlying constitutional violation occurred.

5

plaintiffs allege that Cobb, acting under color of law, violated Brown's Fourth Amendment right to be free from unreasonable seizures, they have satisfied the first prong.

The deliberate indifference element creates "a stringent standard of fault," *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997), which a plaintiff cannot plead generally, *Tobey v. Napolitano*, 808 F. Supp. 2d 830, 843 (E.D. Va. 2011). Indeed, a plaintiff must identify a "specific deficiency rather than general laxness or ineffectiveness in training." *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987). Furthermore, a plaintiff must show that the municipality disregarded a known or obvious consequence of its decision. *Brown*, 520 U.S. at 410. A plaintiff can allege deliberate indifference by pleading facts to indicate that policymakers knew about and acquiesced in "a pattern of constitutional violations." *Mitchell*, 308 F. Supp. 2d at 704. Alternatively, a plaintiff can allege that the city failed to train employees about an "obvious constitutional duty that the particular employees are certain to face." *Id.* To impose liability under the latter method, a plaintiff must establish that "the underlying constitutional right is quite clear and is one that the subordinates reasonably can be expected to confront with some regularity." *Id.* at 705-06. The plaintiffs here appear to rely on the second method of proving deliberate indifference.

The Court finds it helpful to determine what the plaintiffs do *not* allege. The plaintiffs do not make "the wholly unsupported leap in logic that, because [Brown] was allegedly handled with excessive force, there must be a policy or custom, or lack of training, that led to such treatment." *Hales v. City of Newport News*, No. 4:11-cv-28, 2011 WL 4621182, at *14 (E.D. Va. Sept. 30, 2011). Nor do the plaintiffs allege that the City shoulders liability for failing to train a single officer. *See City of Canton*, 489 U.S. at 390-91. Indeed, the plaintiffs do not claim that the City is liable because it inadequately failed to train Cobb alone. Rather, the plaintiffs allege that Cobb's

assertion that his actions comported with his RPD training creates a reasonable inference that the City failed to train *all* officers on the use of deadly force.

Furthermore, the plaintiffs allege a number of specific actions Cobb failed to take before using deadly force—actions they claim a properly trained officer would take. These include inquiring into the mental condition of an individual when the individual displays signs of mental disturbance, exhausting all alternatives to non-deadly force, ensuring the level of force used matches the level of force required, and giving clear verbal commands in a crisis situation. Taken together with the reasonable inference that RPD officers "are likely to encounter" situations involving the use of deadly force, (Am. Compl. ¶ 72), the amended complaint alleges sufficient facts to satisfy the deliberate indifference element. *See Moody v. City of Newport News*, 93 F. Supp. 3d 516, 539-40 (E.D. Va. 2015) (noting that the "paradigmatic example" of an obvious constitutional duty that police officers will face involves the use of deadly force and that failing to train in this context constitutes deliberate indifference).

Finally, the plaintiffs must show a "sufficiently close causal link" between the training deficiency and the alleged violation—that the violation was "almost bound to happen." *Spell*, 824 F.2d at 1390. The plaintiffs' allegations satisfy this element for the same reasons that they satisfy the second element. By establishing that RPD officers have an "obvious constitutional duty regarding the use of deadly force and are certain to face the need to apply such force," the plaintiffs simultaneously demonstrate that "the failure to train officers in the appropriate constitutional limits

on the use of deadly force makes the deprivation of constitutional rights almost bound to happen." *Moody*, 93 F. Supp. 3d at 540 (internal quotation marks omitted).

Accordingly, the amended complaint alleges a plausible failure to train claim. Again, however, the Court emphasizes that a closer look at the precise contents of the City's training program may well lead to a different result.

### III. CONCLUSION

The amended complaint sufficiently pleads municipal liability under § 1983. The Court, therefore, will deny the City's motion to dismiss.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 3 Dec. 2018
Richmond, VA

/s/ /s/
John A. Gibney, Jr.
United States District Judge

8