IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PATERSON BROWN, SR. and
KATHY M. BROWN, Co-Administrators
of the Estate of Paterson Brown, Jr.,
Deceased,

        Plaintiffs,

v.                                                         Civil Case No. 3:17-cv-00627-JAG

DAVID L. COBB, individually and in his
Official Capacity as a Police Officer for the
City of Richmond, Virginia, and CITY OF
RICHMOND,

        Defendants.

## OPINION

This case arises from the fatal shooting of 18-year-old Paterson Brown, Jr., by an off-duty Richmond police officer, David L. Cobb. The administrators of Brown's estate, Paterson Brown, Sr., and Kathy Brown (collectively, the "plaintiffs"), filed this action against Cobb and the City of Richmond (the "City"). The Court denied the City's motion to dismiss the plaintiffs' § 1983 claim for failure to train, but allowed the City to seek early summary judgment on the issue, which the City has done.[1] Because the plaintiffs cannot show that the City's training policy demonstrates deliberate indifference concerning police officers' use of force, much less that the policy caused the tragic incident in this case, the Court will grant summary judgment for the City.

---

[1] Cobb answered the complaint. The Court dismissed the plaintiffs' Eighth Amendment claim against him, but all other claims as to Cobb remain pending.

# I. BACKGROUND

On October 17, 2015, Cobb, an off-duty Richmond police officer, brought his girlfriend's car to a car wash in Chesterfield, Virginia. After Cobb left the car unattended, he saw Brown get into the car. When Cobb realized that Brown did not work for the car wash, he approached the car with his gun drawn and opened the driver-side door. Cobb identified himself as a Richmond police officer, and, paradoxically, told Brown both to get out of the car and not to move. Cobb also asked a bystander to call 911 to request backup from Chesterfield police. Brown did not have a weapon.

At one point, Brown tried to close the driver's side door of Cobb's car, prompting Cobb to move closer to the car with his gun drawn. When Brown tried to close the door a second time, Cobb stood in the way with his gun drawn, within two or three feet of Brown, and pulled Brown's left arm to prevent the door from closing. This caused Brown's foot to come off the brake, and the car moved forward. Cobb then shot Brown, either because he thought Brown was trying to drive away when the car inched forward, or because he felt that Brown had disobeyed the order not to move. The gunshot struck Brown in an artery near his left pelvis. After shooting him, Cobb pulled Brown out of the car and placed him face down on the ground, but did not pat him down for a weapon. An ambulance transported Brown to a hospital, where he died later that day. A jury later convicted Cobb of voluntary manslaughter and he served three months in jail.

Cobb acknowledged in his answer to the complaint that "all of his relevant actions in this matter comported and complied with the training he received" from the Richmond Police Department (the "RPD"). (Dk. No. 22, at 7.) In support of its summary judgment motion, the City submits training documents, policies and guidelines on the use of force, and the testimony of RPD Officer Michael Musselwhite from Cobb's criminal trial. Essentially, the documents show that

the City uses various methods to train officers on the use of force at the police academy and twice a year thereafter. The City's program includes training on weapons and vehicular contacts as well.

The City argues that the plaintiffs cannot present sufficient evidence of deliberate indifference in its training program. In response, the plaintiffs offer an expert report from Kenneth Miller, the Chief of Police for Petersburg, Virginia.[2] Chief Miller identifies four problems with the City's training, which the plaintiffs argue create genuine disputes of material fact and thus preclude summary judgment for the City.

## II. DISCUSSION[3]

### A. Monell *Liability and the Failure to Train*

In relevant part, § 1983 provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

---

[2] The plaintiffs filed their expert disclosures. The City contends that, in addition to its improper filing, Chief Miller's report is inadmissible hearsay. "[F]acts in support of or opposition to a motion for summary judgment need not *be* in admissible form;" instead, a party must identify "facts that *could* be put in admissible form." *Jones v. W. Tidewater Reg'l Jail*, No. 2:15-cv-316, 2016 WL 3647591, at *3 (E.D. Va. June 30, 2016). The Court assumes that the plaintiffs could put the opinions into an admissible form for trial. *See Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 538-39 (4th Cir. 2015) (holding that a court properly considered an expert report on summary judgment when an affidavit said that the expert would testify accordingly at trial). In any event, Chief Miller's report does not change the Court's ruling.

[3] Federal Rule of Civil Procedure 56 directs courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, if the non-moving party fails to sufficiently establish the existence of an essential element to its claim on which it bears the ultimate burden of proof, the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

3

42 U.S.C. § 1983. To establish liability under § 1983, a plaintiff must demonstrate that the defendant acted under color of state law, violated the plaintiff's federal constitutional or statutory rights, and caused injury. *Brown v. Mitchell*, 308 F. Supp. 2d 682, 692 (E.D. Va. 2004). A plaintiff cannot sue a local government "under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). In other words, "the municipality *itself* [must] cause the constitutional violation" to establish liability; vicarious liability will not attach to a municipality under § 1983. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Instead, a locality faces liability only when officers inflict injury while executing the locality's custom, usage, or policy. *Monell*, 436 U.S. at 694.

Specifically, a locality can be liable for failing to train employees. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To recover under this "tenuous" theory, *id.*, a plaintiff must prove that "(1) the [local government] subordinates actually violated the plaintiff's constitutional or statutory rights; (2) the [local government] failed to train properly the subordinates thus illustrating a 'deliberate indifference' to the rights of the persons with whom the subordinates come into contact; and (3) this failure to train actually caused the subordinates to violate the plaintiff's rights." *Mitchell*, 308 F. Supp. 2d at 701. Causation in this context means that a training deficiency made the violation basically "bound to happen." *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987). Courts require an "affirmative link . . . to avoid imposing liability on municipal decisionmakers in the absence of fault and causation." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999).

The deliberate indifference element creates "a stringent standard of fault." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). To establish this element, a plaintiff must identify a "specific deficiency rather than general laxness or ineffectiveness in training," *Spell*, 824 F.2d at 1390, and show that the municipality disregarded a known or obvious consequence of its training

4

decision, *Brown*, 520 U.S. at 410. In other words, "mere negligence on the part of policymakers is not sufficient." *Spell*, 824 F.2d at 1390. Liability does not attach when one employee "happen[s] to apply the policy in an unconstitutional manner," or when a city fails to satisfactorily train one officer. *City of Canton*, 489 U.S. at 387, 390. "Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training." *Id.* at 391. Even "adequately trained officers occasionally make mistakes." *Id.* Moreover, a number of other factors might cause an officer to use excessive force. *Okla. City v. Tuttle*, 471 U.S. 808, 831 (1985).

Typically, a plaintiff must show a "pattern of similar constitutional violations by untrained employees," to demonstrate deliberate indifference. *Connick*, 563 U.S. at 62. Alternatively, in "narrow circumstances," *Johnson v. City of Richmond*, No. 3:04-cv-340, 2005 WL 1793778, at *10 (E.D. Va. June 24, 2005), a plaintiff can prove deliberate indifference by showing that a locality failed to train employees about an "obvious constitutional duty that the particular employees are certain to face." *Mitchell*, 308 F. Supp. 2d at 704; *see also Brown*, 520 U.S. at 409 (noting that in the absence of a pattern, a violation "may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations"). The "paradigmatic example" of an obvious constitutional duty that police officers will face involves using deadly force. *Moody v. City of Newport News*, 93 F. Supp. 3d 516, 539 (E.D. Va. 2015).

### B. Application to the Plaintiffs' Case

Here, the plaintiffs did not plead a pattern of constitutional violations, so they must prove deliberate indifference by showing that the City failed to train officers about the use of deadly force, an obvious constitutional duty. The plaintiffs' expert, Chief Miller, cites four deficiencies in the City's use of force training. First, he says that Cobb used his off-duty firearm, a Glock, to kill Brown. While Cobb received training for his on-duty Sig firearm, Chief Miller claims that

5

Cobb was not as "proficient and certain of the use of his Glock."[4] (Dk. No. 43-1, at 5.) Second, Chief Miller claims that Cobb did not receive adequate training for vehicular contacts because he worked as a school resource officer. Third, Chief Miller calls the City's training materials "extremely vague" because the City authorizes officers to draw their firearms when "circumstances cause the officer to reasonably believe that it may be necessary to use" force, without providing examples. (*Id.*) Finally, Chief Miller indicates that Cobb did not receive adequate training to remove Brown from the vehicle or use first aid after he shot Brown.

Chief Miller's opinions do not create a genuine dispute of material fact. First, three of his four conclusions pertain to Cobb's individual training, rather than the City's training program. *See City of Canton*, 489 U.S. at 390-91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city[.]"); *see also Lee v. City of Richmond*, No. 3:12-cv-471, 2013 WL 1155590, at *7 (E.D. Va. Mar. 19, 2013) (declining to hold a city liable for failing to "train these particular officers to deal with this particular situation in this particular instance").

Even if Chief Miller's opinions criticize the City's training policies more broadly, the Court finds the opinions conclusory.[5] *See M&M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 165 (4th Cir. 1992) ("[A]n expert's conclusory affidavit lacking facts does not

---

[4] The plaintiffs do not allege that Cobb improperly operated his gun, but that Cobb should not have used his gun at all. *See Rose v. Centra Health, Inc.*, No. 6:17-cv-12, 2017 WL 3392494, at *9 (W.D. Va. Aug. 7, 2017). Because Chief Miller's first conclusion concerns Cobb's proficiency with his gun, the plaintiffs cannot show "an affirmative link between the training inadequacies alleged and the particular constitutional violation at issue." *Id.*

[5] Chief Miller also undermines the plaintiffs' failure to train theory by stating that Cobb "acted contrary to police training and standards," and that he "found nothing in the [City's] policy that authorized Mr. Cobb to use lethal force in this case." (Dk. No. 43-1, at 4); *see also Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001) ("The expert's affidavit does not . . . highlight a disputed issue of fact; rather, it simply contains the ultimate conclusion that the officers' use of force did not conform with accepted police guidelines and practices and was, therefore, excessive.").

satisfy the requirements of [Rule] 56(e).") For instance, Chief Miller asserts that Cobb "was not able to use any empty hand techniques to take Mr. Brown out of the vehicle." (Dk. No. 43-1, at 6.) Chief Miller says that he "found it odd" that Cobb did not extract Brown from the car, and implies, without factual support, that Cobb's actions resulted from a training deficiency. (*Id.*) Similarly, Chief Miller summarily concludes that Cobb "clearly" was not skilled in traffic contacts because he dealt with children in schools. (*Id.* at 5.)

Setting these issues aside, no reasonable jury could find that the plaintiffs meet the stringent deliberate indifference standard. *See Anderson*, 477 U.S. at 248, 255. In addition to the academy, the City requires training on the use of force twice a year. (Dk. Nos. 41-2, at 9; 41-7, at 45.) This includes simulator and reality-based training, (Dk. Nos. 41-2, at 9; 41-4, at 285), a use of force "continuum" or "sliding scale," (Dk. Nos. 41-2, at 17; 41-4, at 18, 348), and "shoot/no shoot" scenarios, (Dk. No. 41-4, at 213, 358). *Cf. Johnson*, 2005 WL 1793778, at *8 (holding that a jury could find deliberate indifference where officers did not receive post-academy use of force training, and the city failed to train on the use of force continuum and shoot/no shoot scenarios).

The City provides officers with a policy barring them from using "more force in any situation than is reasonably necessary under the circumstances." (Dk. No. 41-7, at 18.) Although Chief Miller claims the policy is vague, City policy documents outline more specific parameters for using deadly force. (*Id.* at 40-52). Moreover, the City's reality-based training gives officers information on using force in various situations. (Dk. No. 41-4, at 288-97.) Other training materials provide factors to determine the appropriate amount of force. (*Id.* at 301-05; 342-52.) The City also requires officers to qualify with both their on- and off-duty firearms, (Dk. Nos. 41-4, at 51-59; 41-7, at 28-39), which Cobb did with his Glock on at least two occasions, (Dk. No.

7

41-3, at 200-03). Additionally, the City provides training on vehicular contacts, including occupant extraction. (Dk. Nos. 41-2, at 43, 50-51; 41-3, at 44, 55, 73; 41-4, at 108-26, 351-52.)

In light of these facts, the plaintiffs cannot show deliberate indifference using Chief Miller's conclusory assertions. The alleged inadequacies with the City's training do not amount to express or tacit authorizations, or failures to prohibit foreseeable unconstitutional conduct. *See Spell*, 824 F.2d at 1390. The evidence does not show that the risk of a constitutional violation is a "plainly obvious" or a "highly predictable consequence" of the City's training program. *Johnson*, 2005 WL 1793778, at *5. Moreover, "the fact that more or better training could have been instituted" does not establish deliberate indifference. *Id.*; *see also Guerra v. Montgomery Cty.*, 118 F. App'x 673, 675-76 (4th Cir. 2004) (affirming summary judgment for the county when the plaintiff relied on a single expert who called for "more or better training" in two specific areas).

Accordingly, the plaintiffs do not raise a triable issue of fact as to whether the City's training policy exhibits deliberate indifference to citizens' constitutional rights. Nor can the plaintiffs show the requisite causation; the evidence does not establish an "affirmative link" between the City's training and the constitutional violation at issue. *Carter*, 164 F.3d at 218.

## III. CONCLUSION

Any number of—perhaps unsatisfying—reasons might explain Cobb's actions. The evidence, however, does not demonstrate that the City failed to train its officers on the use of force, thus causing the tragic death in this case. Accordingly, the Court will grant the City's motion for summary judgment and dismiss the City with prejudice. The case will proceed as to Cobb.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 26 June 2019
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge